# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:08CR5 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| STANLEY L. SUOJANEN, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant Stanley L. Suojanen (Suojanen) (Filing No. 28). Suojanen is charged in the Indictment with a conspiracy to distribute marijuana (Count I) in violation of 21 U.S.C. § 846 and the possession with intent to distribute more than 1,000 kilograms of marijuana (Count II) in violation of 21 U.S.C. § 841(a)(1). Suojanen seeks to suppress evidence obtained as a result of a traffic stop by the Douglas County Sheriff's Office (DCSO) on December 12, 2007, on Interstate 80 in Omaha, Nebraska.

An evidentiary hearing was held on Suojanen's motion on November 13, 2008. Suojanen was present for the hearing along with his retained counsel, Clarence E. Mock, III. The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda. During the hearing, the court heard the testimony of DCSO Sergeant Edward J. Van Buren (Sergeant Van Buren). The court also received into evidence the following exhibits: a DVD of the traffic stop (Exhibit 1); a photograph of a rear license plate (Exhibit 2); a photograph of a front license plate (Exhibit 3); a photograph of a truck and camper (Exhibit 4); two photographs of the inside of the camper (Exhibits 5 and 6); a photograph of marijuana (Exhibit 10); and a weather report (Exhibit 101). A transcript of the hearing (TR.) was filed on November 17, 2008 (Filing No. 56).

## FINDINGS OF FACT

Sergeant Van Buren has been employed with the DCSO for 23 years and has been the sergeant for the canine (K-9) unit since 2001 (TR. 5-6). As sergeant of the K-9 unit, he supervises five DCSO deputies and their canines as well as conducts canine training

for the DCSO (TR. 6).  Apart from law enforcement requests for assistance with canine calls to search buildings, vehicles and other structures and to search for suspects, the DCSO K-9 unit performs Interstate 80 criminal interdiction (TR. 6).  Sergeant Van Buren described interdiction as being trained to detect criminal activity occurring on the interstate highways, to include drug smuggling, terrorism, transportation of firearms, and fugitive apprehension  (TR. 6 -7).

Around 12:45 p.m. on December 12, 2007, Sergeant Van Buren was in uniform and in a marked DCSO patrol vehicle which was parked eastbound along the south side of the road on Interstate 80 near Harrison Street (TR. 7).  Sergeant Van Buren was observing traffic when a Chevy truck pulling a camper (truck/camper) passed Sergeant Van Buren's position (TR. 8).  Sergeant Van Buren did not observe a visible rear license plate on the back of the truck/camper  (TR. 8).  Sergeant Van Buren could see the numbers on the plate but was unable to see any identification of the state of issuance (TR. 11).  Sergeant Van Buren pulled eastbound onto the interstate to catch up to the truck/camper (TR. 11).  Sergeant Van Buren eventually caught up to the truck/camper near Q Street (TR. 11).  As the truck/camper was traveling eastbound, Sergeant Van Buren observed the truck/camper's right rear tires cross over onto the shoulder for several seconds (TR. 12).  Sergeant Van Buren accelerated to move closer to the Chevy truck/camper in order to read the rear license plate and was unable to do so (TR. 12).  Sergeant Van Buren then pulled ahead of the truck/camper in order to read the front license plate and was unable to do so (TR. 12).  The license plate bracket covering the outer edges of the plates combined with accumulated dirt prevented Sergeant Van Buren from discerning the state of issuance for the plates (TR. 12-13).  Sergeant Van Buren then pulled behind the truck/camper and initiated a traffic stop near 96th Street and Interstate 80 (TR. 13).  The truck/camper pulled to the side of the interstate without incident (TR. 13).  Sergeant Van Buren's patrol vehicle was equipped with a video camera with sound which recorded the stop (TR. 25; Exhibit 1).  The weather was cold, approximately 18 degrees, with the wind from the south/southwest (Exhibit 101).

Sergeant Van Buren radioed DCSO dispatch about the stop, got out of his patrol vehicle, and approached the driver's side of the truck/camper (TR. 13).  Suojanen, the

driver, was the sole occupant of the truck/camper (TR. 13).  Suojanen was attired in a pull-over sweater (TR. 44).  As Suojanen rolled down the driver's window, Sergeant Van Buren asked Suojanen for a driver's license and registration and Suojanen complied (TR. 14). Sergeant Van Buren noted Suojanen's hand was shaking visibly as Suojanen handed his insurance card to Sergeant Van Buren (TR. 14).  While Sergeant Van Buren was speaking with Suojanen, Sergeant Van Buren could smell a strong odor of marijuana coming from the inside of the truck (TR. 15).   Sergeant Van Buren has twenty-eight years of law enforcement experience including five years working undercover and ten years of criminal interdiction (TR. 15).  Sergeant Van Buren has made numerous seizures of large amounts of marijuana (TR. 15).  Sergeant Van Buren testified he has experienced the smell of raw marijuana during training and his on-the-job experience (TR. 31-34).  Sergeant Van Buren observed a blanket and pillow in the back seat of the four-door truck and there were no other items of apparel (TR. 15; 44).  This observation seemed suspicious to Sergeant Van Buren since the truck was pulling a camper (TR. 15-16).  Sergeant Van Buren asked Suojanen to walk back to Sergeant Van Buren's patrol car (TR. 16).  As Sergeant Van Buren walked back to the patrol car, Sergeant Van Buren noticed the windows in the camper were covered over but not with curtains or blinds (TR. 16-17).

Suojanen walked back to and took a seat in the patrol car (TR. 17).  Sergeant Van Buren ran an EPIC (El Paso Intelligence Center) check on Suojanen while speaking with Suojanen about Suojanen's itinerary and ownership of the truck/camper (TR. 17-18). While Suojanen was in the patrol vehicle, Sergeant Van Buren smelled the odor of raw marijuana coming from Suojanen's clothing (TR. 18).  Suojanen told Sergeant Van Buren that he owned the truck/camper and he was traveling from Utah to Des Moines to visit his grandparents (TR. 18).  While sitting in the patrol vehicle, Suojanen was extremely nervous demonstrated by looking around, breathing heavily and being unable to sit still or unable to maintain eye contact with Sergeant Van Buren ( TR. 19).  Sergeant Van Buren explained to Suojanen the entire license plate had to be visible and the license plate cover could not cover up certain identifying items (TR. 20).   After the completion of the EPIC check, Sergeant Van Buren returned the documents to Suojanen and told Suojanen he was only being issued a warning citation in this instance (TR. 20).

Sergeant Van Buren asked Suojanen if Sergeant Van Buren could ask some additional questions before Suojanen left and Suojanen agreed (TR. 20).  Sergeant Van Buren asked Suojanen if there was any contraband in the truck/camper like marijuana, methamphetamine, cocaine or currency (TR. 20).  Suojanen said there was none (TR. 20).  Sergeant Van Buren asked Suojanen if Suojanen was responsible for all the items in the truck/camper and Suojanen replied that he was (TR. 21).  Sergeant Van Buren asked Suojanen for consent to search the truck/camper and Suojanen said no (TR. 21).  Thereafter Sergeant Van Buren searched the truck/camper and found over 90 bales of marijuana in the camper (TR. 22-23).  Sergeant Van Buren also found clothing hanging in the closet in the camper (TR. 44).  Suojanen was arrested and did not provide a post-arrest statement (TR. 24).

### LEGAL ANALYSIS

Suojanen argues Sergeant Van Buren had insufficient basis to stop Suojanen's truck/camper, insufficient basis to detain Suojanen, and insufficient probable cause to search the truck/camper.

Sergeant Van Buren could not read the license plates on the truck/camper.  The state of issuance or other identifying data was apparently covered with a license plate cover (Exhibits 2 and 3).  As such, the display of the license plates was in violation of Nebraska traffic laws.  A law enforcement officer's observation of a traffic violation provides probable cause to stop a vehicle.  *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (**citing** *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)).  An officer's subjective motivations do not affect the reasonableness of a traffic stop based on the violation of the traffic laws.  *Long*, 532 F.3d at 795; *United States v. Chatman*, 119 F.3d 1335, 1340 (8th Cir. 1997) ("[T]he stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot.") (internal quotation omitted).  Sergeant Van Buren, having observed a license plate violation, had a basis to stop Suojanen's truck/camper.  The stop was valid.

Contemporaneous with a valid traffic stop, "the officer [is] entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the

4

stop." *Untied States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (**quoting *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000)** (per curiam)).  In fact, a police officer may detain the occupants while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation.  *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008); **see also *United States v. Sokolow*, 490 U.S. 1, 7 (1989)**.  Additionally, the police officer may inquire about the driver's destination, purpose of the trip and whether the police officer may search the vehicle.  *Peralez*, 526 F.3d at 1119; *United States v. Gill*, 513 F.3d 836, 845 (8th Cir. 2008); *United States v. Williams*, 431 F.3d 296, 298 (8th Cir. 2005); *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999).

"If the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry to satisfy those suspicions." *United States v. Ward*, 484 F.3d 1059, 1061 (8th Cir. 2007) (**quoting *United States v. Johnson*, 58 F.3d 356, 357 (8th Cir. 1995)**).  Specifically, an officer may take further action as necessitated by the information volunteered by the motorist, observations of the contents of the vehicle, perceptions made by the police officer regarding illegal drug use, and divergent information from the passengers.  See *$404,905.00*, 182 F.3d at 647.  In any event, the scope and length of any investigation must be reasonable.  *United States v. Chavez Loya*, 528 F.3d 546, 553 (8th Cir. 2008).  "The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *United States v. Ward*, 484 F.3d 1059, 1062 (8th Cir. 2007) (**quoting *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir. 1994) (en banc)**).  Sergeant Van Buren's brief detention of Suojanen before the search of the truck/camper was entirely reasonable.

"Police may search a car without a warrant if they have probable cause to believe that the car contains contraband or evidence." *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999).  Sergeant Van Buren detected the odor of raw marijuana coming from the truck/camper and from Suojanen's clothes.  That alone justifies the search of the truck/camper.  See *United States v. Jennings*, No. 06-4109, 2007 WL 2142260 (8th Cir. July 27, 2007) (per curiam) (unpublished); *United States v. Clayborn*, 339 F.3d 700, 702

(8th Cir. 2003) (holding that the smell of marijuana gave the police probable cause to search); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (same); *United States v. Caves*, 890 F.2d 87, 90-91 (8th Cir. 1989). Suojanen challenges the detection of raw marijuana by Sergeant Van Buren. The court observed the demeanor of Sergeant Van Buren, weighed the twenty-eight year law enforcement experiences of Sergeant Van Buren to include detection and arrest in cases of large quantities of raw marijuana, and credits his testimony that he smelled raw marijuana coming from the truck/camper and Suojanen's clothing even given the temperature and wind conditions. Ninety bales of raw marijuana were discovered in the camper along with Suojanen's clothing. **See** *United States v. Portman*, 207 F.3d 1032, 1033 (8th Cir. 2000) (finding amount of marijuana found supports credibility of officer's testimony as to odor). The court finds Sergeant Van Buren had probable cause to conduct a warrantless search of the truck/camper.

Suojanen's motion to suppress should be denied.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Suojanen's motion to suppress (Filing No. 28) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 7th day of January, 2009.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge